UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE G. SANCHEZ, | No. 2:13-mc-0050-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| STERLING INFOSYSTEMS, INC., | |
| Defendant. | |

This miscellaneous matter is before the undersigned on a third-party witness's motion to quash a deposition subpoena that issued from this court, and related request for sanctions. The underlying case, a class action against defendant Sterling Infosystems, Inc. ("Sterling"), is pending in the District of Rhode Island. Sanchez v. Sterling Infosystems, Inc. ("Sanchez I"), 1:12-cv-00157-L-ADA. On review of the motion, documents filed in support and in opposition, and upon hearing the arguments of counsel, THE COURT FINDS AS FOLLOWS:

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A. Facts Underlying Litigation

Plaintiff is a former employee of SBM Site Services (SBM), a third-party witness in this litigation and movant in this matter. Pl.'s Resp. in Opp'n to Mot. to Quash Dep. Subpoena and for Sanctions ("Opp'n") 2. As a term of employment, plaintiff submitted to a background check through defendant Sterling, a credit reporting agency. Id. Plaintiff alleges that Sterling "sells

1

1  adverse inaccurate items of information without following strict or reasonable procedures to
2  assure maximum possible accuracy," in violation of the Fair Credit Reporting Act ("FCRA") 15
3  U.S.C. §§ 1681 et seq., and that this led to his termination.  Decl. of Timothy Nelson in Supp. of
4  Motion to Quash Dep. Subpoena and for Sanctions ("Nelson Decl.") Ex. A, ECF No. 1-2 at 11,
5  14.  He also alleges he was "required to sign an unlawful consent form" agreeing not to file legal
6  action against Sterling.  Opp'n 3.
7  B.  Procedural Background
8       On March 6, 2012, plaintiff filed a class action against Sterling in the United States Court
9  for the District of Rhode Island.  Nelson Decl. Ex. A.  Plaintiff brings suit on behalf of himself
10 and others similarly situated against Sterling based on the latter's alleged violation of the FCRA.
11 Sanchez I, Compl. 1.
12      On September 19, 2012, the Honorable Senior Judge Ronald Lagueux adopted the parties'
13 discovery plan to "bifurcate discovery, with class discovery first, to be followed by Plaintiff's
14 motion for class certification."  Sanchez I, Order, ECF No. 19 at 1-2.  This scheduling order was
15 drafted by plaintiff, and specified "[m]erits discovery to be scheduled following a ruling on class
16 certification."  Id.   On April 4, 2013, per the discovery plan and Judge Lagueux's text order, the
17 discovery deadline for class certification was modified to May 17, 2013.  Sanchez I, 1:12-cv-
18 00157-L-ADA Order, ECF No. 37.  The filing deadline for the motion for class certification was
19 set for July 30, 2013.  Id.
20 C.  Facts Underlying Discovery Dispute
21      On March 7, 2013, plaintiff deposed SBM's Rule 30(b)(6) deponent, Janice Periolat,
22 pursuant to a subpoena executed in the Northern District of California.  Nelson Decl. Ex. B.
23      On May 2, 2013, Ms. Periolat submitted a correction sheet, which proposed substantive
24 changes to her answers given at the deposition.  Nelson Decl. Ex. C.  These proposed changes are
25 as follows:
26 ////
27 ////
28

2

| Original | Change |
|---|---|
| Page 31, lines 4-7:<br>"Q: Okay. Looking at SBM-20, I'm just asking the forms that Sterling provided to SBM. Is this the form that was used from 2008 to 2012?<br>A: Yes." | "It has come to my attention since my deposition was taken on March 7, 2013, that there were different forms provided by Sterling that were possibly used at different SBM sites from 2008 to 2012. It is possible that all of the SBM sites did not use the same form that was identified as SBM-20." |
| Page 32, lines 8-21:<br>"Q: Okay. Just a couple more questions about SBM-20, the Sterling consent disclosure form. You testified that this is the form that you used from 2008 through 2012; correct?<br>A: You're referring to SBM-20?<br>Q: Yes.<br>A: Yes.<br>Q: Okay. Was there ever a time that SBM said to Sterling, 'Hey we don't like this form. Give us a new for [sic],' or a time where they Sterling said, 'Stop using that form. Use this new one.'?<br>A: Not that I'm aware of.<br>Q: Okay. This is the form that was used; correct?<br>A: That is my understanding, yes." | "It has come to my attention since my deposition was taken on March 7, 2013, that there were different forms provided by Sterling that were possibly used at different SBM sites from 2008 to 2012. It is possible that all of the SBM sites did not use the same form that was identified as SBM-20." |
| Page 33, lines 12-18:<br>"Q: Okay. And so would I be correct based upon what you testified thus far that in each of those 50 to 550 or 600, in each case prior to ordering one of [sic] background checks, your company would have gotten the employee to sign the Sterling consent disclosure form at SBM-20?<br>A: Yes." | "It has come to my attention since my deposition was taken on March 7, 2013, that there were different forms provided by Sterling that were possibly used at different SBM sites from 2008 to 2012. It is possible that all of the SBM sites did not use the same form that was identified as SBM-20." |

Nelson Decl. Ex. C.

The proposed changes were rejected on May 3, 2013 by the deposition reporter because the deposition transcript was never requested to be a "read and sign." Opp'n Ex. B. The proposed changes were also rejected because they were not submitted within the thirty days required by Federal Rule of Civil Procedure 30(e). Opp'n Ex. B.

On May 15, 2013, plaintiff served on SBM's counsel, Timothy Nelson, a deposition subpoena executed in the Eastern District of California to discuss the errata sheet and the circumstances surrounding the proposed corrections. Nelson Decl. Ex. D, ECF No. 1-2 at 35-36. The deposition subpoena set forth the following topics:

> 1. Any oral communications between Michael O'Neil, Esquire, or anyone at the firm of DLA Piper, LLP, and Timothy B. Nelson,

3

>Esquire, or with anyone from the firm of Seyfarth Shaw, LLP, pertaining to the deposition of Janice Periolat taken in the case of Sanchez v. Sterling Infosystems, Inc., including specifically emails, letters, faxes, receipts and email attachments.
>
>2. Any drafts of the purported errata statement signed by Janice Periolat and versions of the contents of the document attached to Timothy B. Nelson, Esquire's letter to Summit Court Reporting dated May 3, 2013.
>
>3. Any telephone records documenting any telephone calls between Michael O'Neil, Esquire and Timothy B. Nelson, Esquire from the time period of March 7, 2013 through May 10, 2013.

Nelson Decl. Ex. D, ECF No. 1-2 at 35-36. Plaintiff also requested written communications regarding the same. Id.

On May 21, 2013, movant filed a motion to quash and requested sanctions.

On June 26, 2013, plaintiff filed an opposition to movant's motion.

On July 3, 2013, movant filed a reply to plaintiff's opposition.

Also on July 3, 2013, defendant appeared in this matter, having filed a memorandum in support of movant's motion to quash.

## LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The court must limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii). The court may also limit the extent of discovery to protect a party or person from annoyance, embarrassment, oppression, undue burden or other improper purposes. Fed. R. Civ. P. 26(c)(1), 26(g)(1)(B)(ii).

"A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2)," and "[t]he deponent's attendance may be compelled by subpoena under Rule 45." Fed. R. Civ. P. 30(a)(1). A nonparty may also be compelled to

produce documents and tangible things via a Rule 45 subpoena.  Fed. R. Civ. P. 34(c).  Rule 45 permits a party to issue a "subpoena commanding the person to whom it is directed to attend and give testimony or to produce and permit inspection of designated records or things."  Fed. R. Civ. P. 45(a)(1)(C).  The recipient may object to a subpoena, or move to quash or modify it.  Fed. R. Civ. P. 45(c)(2), 45(c)(3).  "The district court has wide discretion in controlling discovery" and "will not be overturned unless there is a clear abuse of discretion."  Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988).

"[T]he court that issued the subpoena . . . can entertain a motion to quash or modify a subpoena."  S.E.C. v. CMKM Diamonds, Inc., 656 F.3d 829, 832 (9th Cir. 2011).  The issuing court must quash or modify a subpoena that:

> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person--except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>
> (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A).

## ANALYSIS

Movant seeks to quash plaintiff's deposition subpoena and is requesting sanctions pursuant to Federal Rule of Civil Procedure 45(c)(1).  For the reasons set forth here, the court will grant movant's motion to quash but will deny its request for sanctions.

A.  <u>Motion to Quash</u>

SBM moves to quash on the grounds that the deposition subpoena is (1) untimely, (2) seeks irrelevant information, (3) calls for the disclosure of privileged information, and (4) is improper.  The undersigned finds the first two grounds to be dispositive.

    1.  <u>The Subpoena was Untimely</u>

First, the court finds that plaintiff's deposition subpoena violates the scheduling order in

the underlying litigation. As previously noted, the discovery deadline for class certification was May 17, 2013. Ms. Periolat was deposed on March 7, 2013, and on May 2, 2013, she submitted a corrections sheet proposing changes to the deposition testimony. On May 15, 2013, two days before the discovery deadline, plaintiff served Mr. Nelson with a deposition subpoena scheduling his deposition for May 23, 2013, even though fact discovery pertaining to class certification was to be completed by May 17, 2013.

Movant argues that the deposition subpoena should be quashed because the deposition was scheduled for May 23, 2013, six days after the May 17, 2013 class certification discovery deadline. MTQ 13. The court agrees. The class action scheduling order, adopting the very deadlines plaintiff proposed, reflects that "[class certification] discovery closes 5/17/13." Sanchez I, Joint Mem. to Amend, ECF 37. Plaintiff, however, noticed Mr. Nelson's deposition for May 23, 2013, after the discovery deadline. Tellingly, plaintiff did not seek an extension of the class certification discovery deadline to accommodate the proposed deposition of Mr. Nelson even though Judge Lagueux may have been amenable to modification, having previously extended the discovery deadline once. See Sanchez I, ECF Nos. 30, 37.

Plaintiff attempts to skirt this timeliness issue by arguing (1) that the deposition was served prior to the deadline, and was therefore timely; (2) that because SBM is not a party to the litigation, it is not governed by the deadline; and (3) that the deposition seeks merits discovery, which does not yet have a deadline. Opp'n 10. These arguments have no merit. First, the scheduling order in the underlying litigation specifies that class certification discovery closes on May 17, 2013, and there is no basis for plaintiff's position that a deposition is timely simply because the notice issues before discovery closes. Second, although SBM is not a party to the litigation, plaintiff certainly is. Plaintiff must therefore adhere to the set scheduling dates or be subject to penalty. See Fed. R. Civ. P. 16(f), 37(b)(2)(A)(ii). Finally, plaintiff himself drafted the discovery plan bifurcating discovery, and the scheduling order expressly states that merits discovery is "to be scheduled following a ruling on class certification." The court will not now allow plaintiff to violate the spirit of that scheduling order by asserting that the discovery he seeks is directed to the merits.

At the hearing on SBM's motion to quash, plaintiff asked that his deposition subpoena be converted to a subpoena duces tecum so that he could obtain copies of drafts of the errata sheets sent between Mr. Nelson and counsel for Sterling. This option, however, was available to plaintiff prior to the deadline's passing, and he has failed to show good cause why he did not file a subpoena duces tecum in the first instance.

### 2. The Subpoena Did Not Seek Relevant Information

Moreover, the court finds that plaintiff's deposition subpoena is not likely to lead to the discovery of admissible evidence. At the outset, it is necessary to make a critical distinction regarding the errata sheet: The substance of the proposed modification to Ms. Periolat's deposition testimony (i.e., the number of forms provided by Sterling) is one thing, and the circumstances leading up to the proposed modification are another. The former issue is not before the court. Also not at issue are whether the errata sheet was timely pursuant to Federal Rule of Civil Procedure 30(e) or whether it should be stricken. The only issue presented to the undersigned is whether the deposition of Mr. Nelson regarding the circumstances leading up to the proposed modification to Ms. Periolat's deposition testimony would lead to the discovery of admissible evidence.

Plaintiff argues that the information sought is relevant and relies on Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217 (9th Cir. 2005), a Ninth Circuit case extending the "sham" affidavit rule to deposition transcript corrections. Under the "sham" affidavit rule, a party cannot create an issue of fact precluding summary judgment by an affidavit contradicting his prior deposition testimony. Id. at 1225 (internal citation omitted). In Hambleton, the Ninth Circuit considered a trial judge's duty to strike "sham corrections" to a deposition transcript from the record in a summary judgment context. Id. at 1224-25. Hambleton did not involve, and provides no authority for, discovery directed at the question whether a document not yet offered on summary judgment is a "sham."

The Hambelton court made its "sham affidavit" determination on the basis of the circumstances that were readily apparent. The magistrate judge was concerned with the proposed corrections to a deposition transcript because of the "extensive nature" of those corrections

7

(twenty-seven corrections, many of which altered answers in order to provide facts necessary to defeat summary judgment), because the submitting party failed to submit "any stated reasons for the changes," and because there was an issue of "seemingly tactical timing" since the changes were submitted immediately after a motion for summary judgment was filed. Id. Plaintiff here argues that the corrections to Ms. Periolat's deposition testimony are similarly suspicious because Sterling, not SBM, requested the transcript, the changes to the deposition testimony are "radical," and it took "so long" for a transcript to be requested. Plaintiff therefore seeks to depose Mr. Nelson to uncover evidence of collusion between Mr. Nelson and counsel for Sterling.

The court is unpersuaded. Unlike in Hambleton, Ms. Periolat's proposed changes to her deposition testimony included an explanation for the changes (it had "come to [her] attention . . . there were different forms . . . that were possibly used."), Nelson Decl. Ex. C; the changes were limited to Ms. Periolat's testimony regarding the number of forms provided by Sterling and therefore do not appear extensive; and the timing is not so suspect as to suggest impropriety either on the part of SBM or Sterling or both. While the court acknowledges plaintiff's suspicion regarding the alleged fact that defendant, and not SBM itself, ordered the deposition transcript, plaintiff will not be allowed to pursue this line of discovery simply because he has "raised the specter" of some nebulous wrongdoing. See United States v. Baisden, 881 F. Supp. 2d 1203, 1207 (E.D. Cal. 2012). The undersigned therefore concludes that plaintiff's proposed deposition of Mr. Nelson amounts to nothing more than a "fishing expedition." See Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004). For these reasons, movant's motion to quash will be granted.[1]

B. Request for Sanction

SBM also argues that plaintiff should be sanctioned because the deposition subpoena serves no purpose "other than to harass and burden SBM." MTQ 13. The court does not find sanctions warranted on the facts of this case.

////

---

[1] In light of this finding, the court declines to consider movant's alternative arguments to quash the deposition subpoena.

8

Based on the foregoing, IT IS ORDERED that:

1. Movant's motion to quash is granted; and

2. Movant's request for sanctions is denied.

DATED: July 15, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;sanc0050.mtq